IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PATRICK JAMES GRIDER, an          )
individual Alabama resident; et al.,    )
                                        )
          Plaintiffs,                   )
                                        )
v.                                      )          Civil Action No. 3:07-cv-1031-MHT
                                        )
CITY OF AUBURN, ALABAMA,                )
an Alabama Municipal Corporation;       )
et al.,                                 )
                                        )
          Defendants.

### PLAINTIFFS' MOTION TO AMEND COMPLAINT

COME NOW the Plaintiffs, Patrick James Grider, Daniel Joseph Grider, The Fourth Quarter, Inc., The Grid, Inc. and Grider, Inc. (hereinafter sometimes collectively referred to as "Plaintiffs"), and pursuant to FED. R. CIV. P. 15, file this motion to amend their complaint, and show unto this Honorable Court as follows:

1.      On the 21st day of November, 2007, Plaintiffs filed their complaint in the present case. (Doc. No. 1).

2.      On the 21st day of January, 2008, Defendants filed a motion to dismiss Plaintiffs' complaint (Doc. No. 35).  On the same date, Defendants filed answers to Plaintiffs' complaint.  (Doc. Nos. 36–39).

3.      On the 23rd day of January, 2008, this Honorable Court issued its 26(f) Order, requiring the parties to file their Rule 26(f) report on or before February 20, 2008. (Doc. No. 40).

4.      The present case is not currently set for trial.

5.      FED. R. CIV. P. 15(a) allows parties to amend pleadings upon leave of court, and leave to amend "shall be freely given when justice so requires."

6.      FED. R. CIV. P. 15(d) allows parties to serve a supplemental pleading setting forth transactions which have happened since the date of the original pleading sought to be supplemented."

7.      Since the filing the Plaintiffs' initial complaint, Defendants have adopted several municipal ordinances which Plaintiffs claim give rise to additional causes of legal and equitable action.

8.      Furthermore, Plaintiffs seek to correct the mislabeling of party Defendant Jerry Sparks as Jason Sparks in initial complaint and to correct various grammatical and/or legal errors found in their initial complaint.

9.      Plaintiffs have attached a copy of said proposed first amended complaint hereto as "Exhibit A."

10.     The parties would not be prejudiced by allowing such an amendment.

WHEREFORE, Plaintiffs pray this Honorable Court grant Plaintiffs' motion to amend their complaint as set forth in Exhibit A hereto.

Respectfully submitted this the 5th day of February, 2008.

WHITTELSEY, WHITTELSEY & POOLE, P.C.


_____/s/ Davis B Whittelsey_____
BY:    DAVIS B. WHITTELSEY (WHI067)
       W. DAVID  DAWSON(DAW013)
       Attorneys for Defendants
       Post Office Box 106
       Opelika, Alabama 36803-0106
       Tel.:    (334) 745-7766
       Fax:    (334) 745-7666
       E-mail: dwhittelsey@wwp-law.com

E-mail: ddawson@wwp-law.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this the 5th day of February, 2008, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the following via e-mail:

Randall Morgan
Hill, Hill, Carter, Franco, Cole & Black, P.C.
425 South Perry Street
Post Office Box 116
Montgomery, Alabama 36106-0116
(334) 834-7600


/s/ Davis B Whittelsey
DAVIS B. WHITTELSEY

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK JAMES GRIDER, an individual Alabama resident; et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 3:07-cv-1031-MHT |
| CITY OF AUBURN, ALABAMA, an Alabama Municipal Corporation; et al., | ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' FIRST AMMENDED COMPLAINT

COME NOW the Plaintiffs, Patrick James Grider, Daniel Joseph Grider, The Fourth Quarter, Inc., The Grid, Inc. and Grider, Inc. (hereinafter sometimes collectively referred to as "Plaintiffs"), and file this their First Amended Complaint, and show unto this Honorable Court as follows:

## Introduction

1.      This is a claim for legal and equitable relief to redress the wrongful acts set forth herein and other wrongful acts to proven at trial committed by a municipality and their servants and/or agents acting in their official and individually capacities against the Plaintiffs.  In part, this suit is brought to secure the protection of and to redress the deprivation of rights guaranteed by 42 U.S.C.A. § 1983, and the Fourth and Fourteenth Amendments to United States Constitution.

The Plaintiffs assert the following claims for relief against Defendants:

(I)      Violation of 42 U.S.C.A. § 1983;

(II)      Malicious prosecution;

(III)    Abuse of Process;

(IV)    False Arrest and Imprisonment;

(V)    Conspiracy;

(VI)    Negligence;

(VI)    Wantonness;

(VII)    Deceit;

(VIII)  Fraudulent Suppression;

(IX)    Fraudulent Misrepresentation;

(X)    Tortious Interference with Contractual and Business Relationships;

(XI)    Negligent Training, Hiring and Supervision;

(XII)   Violation U.S. CONST. amend. XIV; and

(XIII)  Complaint to Declare City Ordinances Unconstitutional and for Damages;

The Plaintiffs request a trial by jury for all issues triable by a jury.

### **Jurisdiction and Venue**

2.      Jurisdiction is invoked pursuant to 28 U.S.C.A. § 1331; §

1343(a)(1)(3)(4); and 42 U.S.C.A. §1983.

3.       Jurisdiction of this court for the pendent claims is authorized by Rule

18(a), FED. R. CIV. P., and arises under the doctrine of pendent jurisdiction as set forth in

United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

4.      The incidents made the basis of this lawsuit occurred in Lee County,

Alabama.  Venue is proper pursuant to 28 U.S.C.A. §§ 1391(b) and (c).

## Parties

5.      Plaintiff, **Fourth Quarter, Inc.** (hereinafter sometimes referred to as "Fourth Quarter"), is a corporation organized pursuant to the laws of the State of Alabama, and is doing business as "The Skybar Cafe".

6.      Plaintiff, **The Grid, Inc.** (hereinafter sometimes referred to as, "The Grid"), is a corporation organized pursuant to the laws of the State of Alabama, and is doing business as, "The Highlands".

7.      **Grider, Inc.**, (hereinafter sometimes referred to as "Grider"), is a corporation organized pursuant to the laws of the State of Alabama, and is doing business as "The Tavern".

8.      Plaintiffs, **Patrick James Grider** (hereinafter sometimes referred to as "Pat Grider"), and **Daniel Joseph Grider** (hereinafter sometimes referred to as "Dan Grider") are individual Alabama residents over the age of nineteen (19) residing in the State of Alabama, and are the sole stockholders of Fourth Quarter, The Grid and Grider. Dan Grider, Pat Grider, Fourth Quarter, The Grid and Grider will hereinafter sometimes be referred to as "Plaintiffs."  When the term Plaintiffs is used herein, it is meant to encompass some and/or all of Plaintiffs, despite that in certain occasions, not all Plaintiffs were involved in each allegation plead.

9.      Defendant, **City of Auburn, Alabama** (hereinafter sometimes referred to as "The City"), is a municipal corporation organized pursuant to the laws of the State of Alabama.

10.     Defendant, **William Ham, Jr.** (hereinafter sometimes referred to as "Ham"), is an adult individual Alabama resident over the age of nineteen (19) and is currently employed as the mayor of the City of Auburn, Alabama.

11.     Defendant, **James Trey Neal, III** (hereinafter sometimes referred to as "Officer Neal"), is an adult individual Alabama resident over the age of nineteen (19) who was employed by the City of Auburn as a police officer on the dates of the occurrences made the basis of this suit.

12.     Defendant, **Jason Crook** (hereinafter sometimes referred to as "Officer Crook"), is an adult individual Alabama resident over the age of nineteen (19) who was employed by the City of Auburn as a police officer on the dates of the occurrences made the basis of this suit.

13.     Defendant, **Christopher Carver** (hereinafter sometimes referred to as "Officer Carver"), is an adult individual Alabama resident over the age of nineteen (19) who was employed by the City of Auburn as a police officer on the dates of the occurrences made the basis of this suit.

14.     Defendant, **Slone Maddox** (hereinafter sometimes referred to as "Officer Maddox"), is an adult individual Alabama resident over the age of nineteen (19) who was employed by the City of Auburn as a police officer on the dates of the occurrences made the basis of this suit.

15.     Defendant, **Jerry Sparks**, (hereinafter sometimes referred to as "Officer Sparks"), is an adult individual Alabama resident over the age of nineteen (19) who was employed by the City of Auburn as a police officer on the dates of the occurrences made the basis of this suit.

16.     Defendant, **Andrew Meeks** (hereinafter sometimes referred to as "Meeks") is Deputy Public Safety Director for Codes for the City of Auburn.  Meeks is an individual Alabama resident over the age of nineteen (19) residing in the State of Alabama.

17.     Defendant, **Thomas Massey** (hereinafter sometimes referred to as "Massey") is employed as a Fire Inspector for the City of Auburn.  Massey is an individual Alabama resident over the age of nineteen (19) residing in the State of Alabama.

18.     Defendant, **William James** (hereinafter sometimes referred to as "James") is employed as the Public Safety Director for the City of Auburn.  James is an individual Alabama resident over the age of nineteen (19) residing in the State of Alabama.

19.     Defendant, **Charles M. Duggan, Jr**. (hereinafter sometimes referred to as "Duggan") is currently employed as the City Manager of Auburn.  Duggan is an individual Alabama resident over the age of nineteen (19) residing in the State of Alabama.

20.     Each of the above-named individual Defendants are individuals who:

(a)     were acting as agents, servants and/or  employees of Auburn, at all material times set forth herein, and/or;

(b)     due to their individual actions are responsible for the acts and damages complained of herein.

**Summary of Facts**

21.     Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 20 above as if the same were set forth fully herein.

22.     On or about February 23, 1996, Plaintiffs entered into a lease agreement with the Ward Theatre Group (hereinafter sometimes referred to as "Ward") for the rear portion of the building located at 136 West Magnolia Avenue, at the corner of West Magnolia Avenue and Wright Street in Auburn, Alabama, previously known as the "War Eagle Theatre."  This lease and all subsequently referenced leases were in consideration of Plaintiffs' agreement to pay substantial sums of money and were personally guaranteed by Pat Grider and Dan Grider.

23.     In or about April 1996, Plaintiffs opened this portion of the above said premises as a nightclub, doing business as "Neons."

24.     On or about August 7, 1997, Plaintiffs amended their lease agreement with Ward to include the front portion of the aforementioned premises.

25.     On or about October 6, 1998, Rex A. Smith, then employed as the Codes Enforcement Officer for the City of Auburn, conducted a fire safety inspection and concluded that numerous tasks needed to be performed before the new portion of the above said premises could be opened for business.  Included in the list of tasks was the alleged need for a floor plan so that an occupancy capacity could be assigned for the premises.

26.     On or about December 31, 1999, Plaintiffs opened the third and final portion of the building.  The Plaintiffs consolidated all three (3) portions of the building and re-opened the nightclub, doing business as "The Blue Room."  The lease agreement

between the Plaintiffs and Ward for the third and final portion of the premises did not take effect until on or about February 4, 2000.

27.    In or about July 2000, Dan Grider and Pat Grider appeared before Auburn City Judge, the Honorable Joe Bailey (hereinafter sometimes referred to as "Judge Bailey"), for allegedly violating Auburn City Ordinance 1714.  This ordinance purports to require that of the total gross receipts generated by all Restaurant-Lounge licenses, forty percent (40%) must come from the sale of food.  Judge Bailey gave Plaintiffs a three-month probationary period, until October 20, 2000, to "comply" with the (40%) food requirement.

28.    On or about August 10, 2000, Thomas Howard, Auburn Assistant Finance Director (hereinafter sometimes referred to as "Howard"), informed Plaintiffs that The City planned to audit Plaintiffs' records during the probationary period.

29.    On or about October 20, 2000, Plaintiffs submitted copies of gross receipts for the three previous months to the City.  Plaintiffs' gross receipts for the sale of food exceeded 40% in each of the three (3) months submitted.

30.    On or about October 26, 2000, Plaintiffs appeared at a hearing before the Auburn City Court.  At said hearing, the Auburn Revenue Office submitted that Pat Grider and Dan Grider failed to meet the 40% requirement.

31.    On or about January 16, 2001, the Auburn City Council (hereinafter sometimes referred to as the "City Council"), reviewed the business licenses of two (2) Restaurant-Lounge licensees alleged to have failed to meet the forty percent requirement proscribed by ordinance 1714.  One of the businesses was the Blue Room, and the other was "Bodega," a nightclub located next door to the Blue Room.

32.     At said meeting, The City Council agreed to give both licenses a six (6) month probationary period to comply with the ordinance.  The probationary period was to end on July 16, 2001.  Plaintiffs were not in violation of the ordinance.

33.     On or about February 6, 2001, the City Council passed a City Ordinance changing and/or attempting to change the hours of alcohol sales for Restaurant-Lounge licenses.  The City Council did not change the time for Clubs, Lounges or Taverns.  Fourth Quarter maintains a Restaurant-Lounge license.

34.     On or about June 11, 2001, more than one month before the end of the aforementioned probationary period, Plaintiffs received another letter from Howard, stating that The City had retained an independent Certified Public Accountant to perform an audit concerning Fourth Quarter's sales.

35.     On or about June 13, 2001, The Grid opened the Highlands, doing business under a Lounge license issued by The City.  The Highlands was located approximately two (2) miles from the Blue Room, in the City of Auburn.  The initial occupancy capacity given for the premises housing The Highlands was One Hundred Seventy-Three (173).

36.     The occupancy number referenced in paragraph 35 above was arbitrarily assigned, was not established pursuant to the appropriate rules and regulations and was much lower than required by the applicable rules and regulations.

37.     At a City Council meeting conducted or about September 4, 2001, The City Council removed Bodega's license from probation.  No audit was performed on the license.

38.     At the meeting, the Council questioned Plaintiffs' policy of providing an "all-you-can-eat buffet," being operated by Plaintiffs to comply with the 40% food sale requirement of Ordinance 1714. Plaintiffs' operation of an, "all-you-can-eat buffet," in order to comply with Ordinance 1714, had previously been approved by the City Manager at that time, Douglas Watson (hereinafter "Watson").

39.     The City audit revealed the Blue Room figures were in compliance with Ordinance 1714. The City Council, however, requested that the auditor it hired compare his audit with the opinion of Andrea Jackson, The City's Finance Director (hereinafter sometimes referred to as "Jackson").

40.     At the September 4, 2001 City Council meeting, several members of The City Council moved to revoke Plaintiffs' liquor and/or business license. The City Council agreed to postpone a decision on the motion for revocation for an additional two (2) weeks.

41.     On or about September 6, 2001, The City, by and through James and/or other Defendants issued a Certificate of Occupancy for The Blue Room. The City and other Defendants calculated the total capacity for The Blue Room at Six Hundred Three (603) persons. To the best of Plaintiff's knowledge, information and/or belief, said Certificate of Occupancy is the first record of any capacity issued to Plaintiffs. The occupancy number was arbitrarily established, was not established pursuant to the applicable rules and regulations, and was much lower than was warranted by the applicable rules and regulations.

42.     The appropriate occupancy number for the rear portion of the premises is at least Six Hundred Eighty (680), with the possibility of an increase to Eight Hundred (800) persons, conditioned on certain changes to the premises.

43.     On or about September 18, 2001, the City Council reconvened and passed Resolution No. 01–112.  This resolution was to extend the probationary period for the Blue Room until December 31, 2001.  The resolution further placed unlawful restrictions on Plaintiffs from using a buffet concerning Ordinance 1714.

44.     On or about November 20, 2001, the City Council passed Ordinance 2032 containing an option A and B (said Ordinance will hereinafter sometimes be referred to as "Option B.").  Option B provided owners of Restaurant-Lounges and Restaurant-Pubs in Auburn's urban core with, among other things, the option to pay Fifteen Thousand and No/100s Dollars ($15,000.00), thereby exempting said businesses from complying with the 40% food sales requirement to hours before 10:00 p.m. only.

45.     At the November 20, 2001 City Council meeting Ordinance 2032 was amended to include Lounges.  The only Lounge licensee located in Auburn is The Highlands.  Other types of alcohol-serving establishments (i.e., Private Club and Tavern licensees) were not included in the Ordinance.

46.     On or about November 21, 2001, Plaintiffs received a letter from Watson describing the amendment to Ordinance 2032.  Watson's letter outlined another provision of Option B as follows:  "Alcoholic beverages cannot be sold after 2:00 a.m.  This does not mean that the business has to close at 2:00 a.m.; just that there cannot be any sales of alcoholic beverages after 2:00 a.m."  Club and Tavern licensees were exempted from the 2:00 a.m. cut-off on sales of alcohol.

47.    On or about December 2, 2001, Pat Grider was cited by the State of Alabama Alcoholic Beverage Control Board (hereinafter referred to as "ABC") for violating ALA. CODE § 28–3A–25(a)(21) (1975), for allegedly allowing patrons to consume alcoholic beverages in a public place, to wit, the Blue Room, after 2:00 a.m. on a Sunday.

48.    § 28–3A–25(a)(21) provides [It shall be unlawful:]  "Except where authorized by a local act or general act of local application, for the proprietor, keeper or operator of any cafe, lunchroom, restaurant, hotel dining room, or other public place to knowingly permit any person to give away, sell, or serve for consumption on or off the premises, or to drink or consume any alcoholic beverages on the premises of the cafe, lunchroom, restaurant, hotel dining room, or other public place on Sunday after the hour of two o'clock A.M."

49.    In or about April 2003, The City, by and through James and/or other Defendants changed the occupancy of Highlands to Four Hundred Seventy-Seven (477). This occupancy number was arbitrarily assigned, was not calculated pursuant to the applicable rules and regulations, and is substantially lower than required by the applicable rules and regulations.  However, The City, James and/or other Defendants represented that the occupancy number was the appropriate number and had been calculated pursuant to the applicable rules and regulations.

50.    On or about November 9, 2003, City of Auburn Police Officers, (hereinafter sometimes referred to as "APD") entered the Highlands at approximately 3:20 a.m., after the business had closed and through the rear entrance.  Dan Grider was

cited and arrested for an alleged violation of employees illegally possessing alcohol (i.e., beer) after 2:00 a.m.

51.    On or about February 5, 2004, APD claimed to have observed and counted Eight Hundred Fifty-Four (854) patrons leaving the Blue Room.

52.    On or about February 11, 2004, APD officers entered the Blue Room during the peak hours of Plaintiffs' business (i.e., between 11:00 p.m. and 12:00 a.m.) and in front of Plaintiffs' patrons, arrested, handcuffed and escorted out of the premises both Pat and Dan Grider for the alleged overcrowding of February 5.

53.    On or about April 1, 2004, the charges of overcrowding and alleged violation of ALA. CODE § 28–3A–25(a)(21) (1975) alleged to have occurred on or about November 9, were consolidated and presented before the Judge Bailey in Auburn Municipal Court.

54.    At said hearing, Plaintiffs pled guilty to the Code violation. The overcrowding charge was dismissed.  Subsequently, Plaintiffs were sentenced to eighty (80) hours of washing APD motor vehicles.

55.    On numerous occasions following February 5, 2004, Defendants, including but not limited to, numerous officers of APD and other Non-Defendant officers of APD engaged in harassing, annoying, vexatious and threatening behavior targeted at Plaintiffs and Plaintiffs' customers at both the Highlands and the Blue Room, all with improper and unlawful purposes.

56.    Plaintiffs were forced to close the Blue Room due to the wrongful actions of the city, its agents, servants, and employees as set forth above and otherwise.

57.    Plaintiffs remained obligated to Ward pursuant to the lease agreements referenced above and in an attempt to avoid default thereon, began renovating the subject premises.  These renovations continued from in or about the end of April, 2005, until on or about August 19, 2005.

58.    On or about August 19, 2005, Plaintiffs began operating the subject premises as, The Skybar Café (hereinafter sometimes referred to as "Skybar").

59.    During said renovation, the Plaintiffs made substantial aesthetic improvements and limited structural changes, with no structural changes limiting or changing the intended use of the subject premises.  Plaintiffs removed approximately thirty-three percent (33%) of the roof of the front portion.  The structure of the building remained intact.  Plaintiffs also made minor aesthetic changes (e.g., re-floored the front portion, re-painted the building, etc.).  Plaintiffs made no changes whatsoever to the rear portion of the premises.  Approximately seventeen percent (17%) of the building was aesthetically remodeled.

60.    During all times relevant to the incidents made basis of this suit, the International Fire Code of 2003 (IFC (2003)) governed the calculation and issuance of occupant load for the subject premises.

61.    Section 3403 of the IFC (2003) provides as follows:  "Additions or alterations to any building or structure shall conform with the requirements of the code for new construction … [P]ortions of the structure not altered and not affected by the alteration are not required to comply with the code requirements for a new structure." § 3403, INT'L FIRE CODE (2003).

62.     Upon opening Skybar, The City, by and through Massey and/or other Defendants issued a new occupancy number for the premises.  Massey split the prior number of Six Hundred Three (603) between the back and front of the premises.  In effect, the new maximum occupancy number issued to Skybar in August, 2005, was Two Hundred (200) persons for the front portion, and Four Hundred Three (403) persons for the rear portion.  This occupancy number made it impossible for Plaintiffs to do business and/or use the subject premises for their intended purposes.  The occupancy number was arbitrarily calculated, was not calculated in compliance with the applicable rules and regulations, and was substantially lower than required by the applicable rules and regulations.  However, The City, Massey and/or other Defendants represented that the number was the correct number and was calculated pursuant to the appropriate rules and regulations.  It was not.

63.     Shortly after opening the Skybar, some type of investigation, proposed prosecution, or like kind plan was instigated by The City, APD and/or The City's prosecutors.  Patrons of the Plaintiffs were brought by APD Defendants, and under the threat of prosecution by The City, to be interviewed by The City's Attorneys, and to allegedly give testimony that Plaintiffs were and had violated various City ordinances and/or ABC rules and regulations.  Further, patrons of Plaintiffs' business were told by various APD officers to make false reports against Plaintiffs.

64.     Shortly after opening the Skybar, and on information, knowledge and belief, APD shift supervisors, namely:  Lieutenant Howell and Officer Maddox, directed Officer Neal and other APD patrol officers to begin surveillance of the Skybar.  Officer Neal spearheaded the "investigation," to "put the Griders out of business."  Officer Neal,

along with Officers Crook, Carver and Maddox began reconnaissance around the area surrounding Skybar.  APD officers patrolling on foot were instructed to, "stay away from down there [Skybar], and let them do what they're doing."

65.    On or about September 20, 2005, Neal entered Biggin Hall, property of Auburn University located directly across West Magnolia Avenue from Skybar, and began videotaping the business operations of Skybar.

66.    On or about September 29, 2005, shortly after 2:00 a.m., the APD patrol division conducted a "sting" operation on the Skybar.  Officer Neal and Officer Cody Hill again surveilled the Skybar via videotape from Biggin Hall, while Officers Crook and Carver patrolled the outside of the Skybar on foot.  This "sting operation" was done, at least in part, in furtherance of The City's investigation, proposed prosecution, etc. against Plaintiffs.

67.    Officers Neal and Hill were videotaping the premises on said morning. The video recording also contained audio, and each officer was equipped with walkie-talkies and/or Nextel phones with radio-to-radio capability.

68.    On September 29, 2005 the City, by and through the aforementioned officers, acting individually and in their capacities as agents, servants and/or employees of the Auburn Police Department made allegations that Pat Grider bribed or attempted to bribe an APD Officer.  This bribery was alleged to have been committed by Pat Grider while the Skybar was under video and audio surveillance.  However, the video and audio recording equipment was turned off approximately three (3) minutes before the alleged bribery occurred.

69.     On or about September 30, 2005, Pat Grider was charged in the District Court of Lee County, Alabama, in case number DC–05–2694 for allegedly bribing a public servant.  Pat Grider was arrested, made to post bond and appear before the District Court of Lee County, Alabama.

70.     On or about November 29, 2005, a Preliminary Hearing was conducted in the District Court of Lee County, Alabama, in the matter of the State of Alabama v. Patrick James Grider, case number DC–05–2694.  Following an *ore tenus* hearing, the Court dismissed the charges for lack of probable cause.

71.     On or about April 2, 2006, APD Officers entered the Skybar at 2:10 a.m. and completed an incident offense report, claming that Plaintiffs violated a city liquor law.  No formal citation was ever issued.  However, that a citation was issued was somehow published in the Opelika-Auburn News.

72.     On or about April 18, 2006, proposed ordinance §§ 3-1(11) and (12) and § 3–4, which proposed amendments to an existing ordinance, appeared on the agenda of the Auburn City Council.  The proposed ordinance sought to place restrictions on the sale, consumption and/or possession of alcohol related to the two separate premises owned and operated by Plaintiffs to the exclusion of all others.

73.     On or about May 25, 2006, Plaintiffs filed a sworn notice of claim against the City of Auburn with the City Clerk.

74.     On or about July 28, 2006 and October 16, 2006, Defendants, City of Auburn, Massey and Meeks, calculated occupancy numbers for the Skybar.  The occupancy numbers were arbitrarily assigned, were not calculated pursuant to the applicable rules and regulations and were substantially below the number required by the

applicable rules and regulations.  The occupancy numbers assigned for the Skybar on these occasions were Two Hundred Ninety-Nine (299) for the front and Six Hundred Thirty-Three (633) for the rear.  The City of Auburn, Massey, Meeks and/or other Defendants represented that the assigned number(s) had been accurately calculated and were the appropriate number(s) for the subject premises.  They were not and are not.

75.    On August 7, 2006, and August 31, 2006, Meeks authored two letters to Plaintiffs concerning the occupancy number(s) for Skybar.  In said letters, Meeks made misrepresentations of material fact concerning the City's calculations for reaching a maximum occupancy number. (Copies of said letters are attached hereto as Exhibit "A" and "B" respectively and are incorporated herein by reference.)

76.    On or about October 14, 2006, Massey entered the Skybar and cited Pat Grider for overcrowding the front portion of Skybar. The citation ordered Grider to appear in the Municipal Court for the City of Auburn, but failed to state a charge or to invoke the jurisdiction of the Municipal Court for the City of Auburn.

77.    On or about October 16, 2006, Massey recalculated the occupancy number for Skybar to Four Hundred (400) in the front and Five Hundred Ninety-Nine (599) for the rear.  The occupancy number was arbitrarily assigned, was not calculated pursuant to the applicable rules and regulations, and was substantially below the number required by the applicable rules and regulations.  The City, Massey and/or other Defendants represented that the aforementioned occupancy number(s) had been accurately calculated and were the appropriate numbers for the subject premises.  They were not and are not.

78.    According to the procedures provided by the IFC (2003), the official building capacity for the Skybar should be approximately One Thousand Five Hundred (1,500) persons.

79.    Throughout the months of April, May, June, July and August, 2007, the City and APD Officer Defendants and other APD Officers engaged in harassing, annoying, vexatious, bothersome and intimidating activities against Plaintiffs with the unlawful purpose of intimidating, threatening and bothering Plaintiffs and to interfere with Plaintiffs' business and/or contractual relationships.  Defendant Ham acquiesced and, in part, directed the activities set forth in this paragraph and other paragraphs wherein it is alleged that Plaintiffs were harassed, annoyed, intimidated, and threatened by The City, the APD Defendants and other Defendants, all with unlawful and improper purposes.

80.    On or about August 24, 2007, Plaintiffs re-opened the Highlands with an assigned occupancy number of Four Hundred Seventy-Seven (477).  This number is substantially lower than required by the applicable rules and regulations.

81.    On or about October 1, 2007, the occupancy number for the Highlands was recalculated to Six Hundred Three (603).  This number was arbitrarily calculated, was not calculated in compliance with the applicable rules and regulations, and is substantially lower than required by the applicable rules and regulations.  This occupancy number was represented to have been properly calculated and represented to be the appropriate number.  It was not and is not the appropriate number.

82.    On or about October 1, 2007, Auburn adopted the International Fire Code of 2006 (IFC (2006)), in lieu of the IFC (2003).

83.     On or about October 6, 2007, Jerry Williams, Codes Enforcement Officer for the City, issued Skybar employee, Thomas Stone (hereinafter sometimes referred to as "Stone"), an apparent capacity violation of Four Hundred Ninety-Eight (498) for the front portion.  This allegation is based on an arbitrarily assigned and improper number for the premises.  Moreover, the citation failed to state a charge, was not sworn to or submitted before a magistrate, yet commanded that Stone appear before the Municipal Court for The City of Auburn to answer a purported allegation constituting a misdemeanor and punishable by a Five Hundred ($500.00) dollar fine and/or six (6) months in jail.

84.     On or about October 26, 2007, Williams entered the Skybar and issued Skybar employee, Brett Shackelford (hereinafter sometimes referred to as "Shackelford"), an apparent capacity violation of Seven Hundred Thirty (730) for the front portion.  This allegation is based on an arbitrarily assigned and improper number for the premises.  This citation was prepared and submitted in the exact manner as the citation referred to in paragraph 83 above.

85.     On or about October 27, 2007, Williams again entered the Skybar and issued Stone an apparent capacity violation of Six Hundred Fifteen (615) for the front portion of the premises.  This allegation is based on an arbitrarily assigned and improper number.  The citation was also prepared and submitted in the exact manner as the citations referred to in paragraphs 84 and 85 above.

86.     Throughout the months of August, September and October 2007, and up to the time of this Complaint, the City, APD Officer Defendants, other Defendants and other APD Officers engaged in harassing, annoying, bothersome and intimidating

activities against Plaintiffs with the unlawful purpose of intimidating, threatening and bothering Plaintiffs and to interfere with Plaintiffs' business and/or contractual relationships. Defendant Ham acquiesced, and at least in part, directed these activities.

87.    Prior to February 6, 2001, there were limited and/or no alcohol sales or consumption limitations for beer and/or alcohol business licenses issued by the City of Auburn. On or about February 6, 2001, the City placed restrictions on Restaurant-Lounge licensees, prohibiting the licensees from selling alcoholic beverages after 3:00 a.m. on Monday through Friday, and after 2:00 a.m. on Saturdays. The ordinance did not affect any other alcohol licenses (i.e., Lounges, Taverns, or Private Clubs).

88.    Prior to November 21, 2001, the limitations on beer or liquor licenses issued by The City were for Restaurant-Lounge licensees to cease alcohol sales at 3:00 a.m. Monday through Friday and 2:00 a.m. on Saturdays. On or about June 13, 2001, the Grid, Inc. opened a business, doing business as The Highlands, pursuant to a Lounge license issued to The Grid by The City. On Nov 21, 2001, The City amended its alcohol ordinance to restrict alcohol sales after 2:00 a.m. everyday for all Restaurant-Lounge licensees and Lounge licensees. On November 21, 2001, The Grid held the only Lounge license issued by the City.

89.    On or about the 10th day of July, 2007, Grider, Inc. obtained a Tavern License and pursuant to said license, began doing business as "The Tavern" in the city of Auburn.

90.    On or about November 9, 2007, the City informed all alcohol-related businesses licensees that the City intended to modify an alcohol related ordinance, to restrict the sales of alcohol after 2:00 a.m. for all alcohol related business licenses, except

for Private Club licensees.  This proposed ordinance, upon information, knowledge and belief, sought to place such restrictions on Tavern licensees for the first time in the City's history.

91.     Each time Plaintiffs opened a business pursuant to a license issued by the City which contained no and/or limited restrictions, the City immediately proceeded to place restrictions on the licensees.  Plaintiffs currently operate three alcohol-providing establishments:  a Restaurant-Lounge, a Lounge and a Tavern.  The City has passed or sought the passage of ordinances to limit all licenses, specifically targeting Plaintiffs' businesses.

92.     On the 15th day of November, 2007, Stone and Shackelford were illegally caused and required to appear before the Municipal Court for the City of Auburn and were tried on some type of alleged misdemeanor offense, despite the citation failing to state on offense and/or invoking the jurisdiction of the Court.  At the conclusion of the trial, and upon Stone and Shackelford's filing written motions to dismiss, the cases were taken under advisement by the Court, despite the Court's lack of jurisdiction.

93.     Defendant Ham, acting in his official capacity as Mayor of the City of Auburn, and individually and in concert with other Defendants derived a scheme and/or plan, using illegal, overreaching, wrongful, harassing, intimidating and other wrongful tactics and/or actions to:  interfere with Plaintiffs' business and/or contractual relationships; to shut down and/or put Plaintiffs out of business; to violate Plaintiffs constitutional rights; and to otherwise damage and/or harm Plaintiffs.

94.     On or about the 18th day of December, 2007, The City, by and through Defendant Ham and the City Council, adopted an amendment to the City's alcoholic

beverage ordinances.  Said amendment, which repealed City Ordinance 1152 and Chapter 3 of <u>The Code of the City of Auburn</u> (hereinafter referred to as "the <u>City Code</u>"), in pertinent part, altered the hours of sale for persons licensed in the City for on-premises sales of alcohol and provided penalties for violations thereof.

96.     The ordinance excluded only existing Private Club Class I or Class II and Retail Tavern licensees from compliance with the hours of sale requirements, except on Sundays after 2:00 a.m.

97.     Said legislation was drafted by and/or introduced by Defendant Duggan (as was the legislation referenced in Paragraph 72 above), and said legislation's adoption was orchestrated by and done at the behest of Defendants Ham and/or Duggan.

98.     On or about the 8th day of January, 2008, The City, by and through Defendant Ham and the City Council, without providing any public notice whatsoever in the City Council agenda, again amended the ordinance to exempt existing Class I or Class II Private Club licensees only from the Sunday sales prohibition.

99.     Said ordinance further provided a "grandfather clause," which exempted any Class I or Class II Private Club license in operation at the time of passage, from compliance with sales hour requirements; thus rendering any Class I or Class II Private Club license obtained or transferred after the amendment's passage, subject to the sales hour requirements.

100.    Said legislation was drafted by and/or introduced by Defendant Duggan, and its adoption was orchestrated by and done at the behest of Defendants Ham and/or Duggan.

101.    On or about January 22, 2008, The City of Auburn, by and through Defendant Ham and the City Council, passed an ordinance that amended Section 5–150.5 of the City Code, which provided amendments to the IFC (2006); thus, the ordinance, in effect, amended the Section 107.6 of the IFC (2006).

102.    Said ordinance "clarif[ied] responsible parties for overcrowding; adopted codes that may be utilized in determining building occupancy; and penalties that apply for overcrowding violations." (Auburn City Council, Agenda Item Summary, Item No. 9b, January 11, 2008)

103.    In a memorandum to Defendant Duggan, Defendant James stated that adopting the amendment would "define the penalties for [an overcrowding] violation." (Memorandum from Bill James to Charles M. Duggan, Jr., January 3, 2008).

104.    On or about the 23rd day of January, 2008, Plaintiffs, The Grid, Inc, Pat Grider and Dan Grider applied for a Class II Private Club license.  Said application is currently pending before the Auburn Planning Department.

## COUNT I:
## VIOLATION OF 42 U.S.C.A. § 1983

105.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 104 above as if set forth fully herein.

106.    At all times material hereto, the conduct of all Defendants were subject to 42 U.S.C.A. § 1983.

107.    Acting under the color of law, Defendants worked to deny Plaintiffs' rights, privileges or amenities secured by the United States Constitution or by Federal law, to wit:

(a)     by depriving Plaintiffs of their liberty without due process of law, by taking them into custody and holding them there against their will, and by placing Plaintiffs in jeopardy without due process of law;

(b)     by making an unreasonable search and seizure of Plaintiffs' property without due process of law;

(c)     by conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Plaintiffs equal protection of laws;

(d)     by instigating improper and illegal criminal procedures against Plaintiffs, and;

(d)     by refusing or neglecting to prevent such deprivations and denials to Plaintiffs, thereby depriving Plaintiffs of their rights and privileges as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

108.     As a direct proximate result of the concerted unlawful acts, conspiracy to act, tortious acts, wrongful acts, and/or malicious prosecution by Defendants, Plaintiffs were deprived of their liberties and property rights without due process of law and their rights to equal protection of the laws and due course of justice were impeded, in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C.A. § 1983.

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly and severally, for actual, general, special, compensatory damages  and further demand

judgment against each of said Defendants, jointly and severally, for punitive damages, together with interest and the costs of this action, including attorney's fees, and such other relief that this Honorable Court deems to be just and equitable.

## COUNT II:
## MALICIOUS PROSECUTION

109.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 108 above as if set forth fully herein.

110.     Defendants, City of Auburn, Neal, Williams, and/or other Defendants maliciously prosecuted the Plaintiffs, and/or maliciously instigated criminal proceedings against Plaintiffs, Dan Grider and Pat Grider:

(1)    Said Defendants instituted prior judicial proceeding against said Plaintiffs (i.e., alleged violations of bribery and alleged violations of the Standard Building Code (1999); the International Building Code (2003) and/or the International Fire Code (2006)).

(2)    The charges were not based upon probable cause, defined as a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.  Favorite Market Store v. Waldrop, 924 So. 2d 719 (Ala. Civ. App. 2005).

(3)     Defendants instituted criminal process against Plaintiffs, Pat Grider and Dan Grider with malice.

(4)    A number of the prior proceedings were terminated in favor of the Plaintiffs.

(5)    As a result of said malicious prosecution, Plaintiffs were caused to:

(a)    Lose substantial sums of money;

(b)    Suffer diminished use and value of business;

(c)    Be wrongfully arrested, jailed and prosecuted, and;

(d)    Suffer severe mental anguish and emotional distress.

111.    Plaintiffs claim punitive damages of the individual Defendants due to their reckless, wanton and/or intentional conduct.

WHEREFORE, Plaintiffs Pat Grider and Dan Grider demand judgment against the above named Defendants and any other appropriate Defendants jointly and severally for injunctive relief and actual, special, compensatory and punitive damages in an amount to be determined by the jury, together with interest and the cost of this action.

## COUNT III:
## ABUSE OF PROCESS

112.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 111 above as if set forth fully herein.

113.    Defendants, The City, Neal, Williams, Massey and/or other Defendants maliciously and/or wrongfully used the legal and judicial processes to accomplish an ulterior and/or unlawful purpose and which was not a legitimate purpose of the particular process employed.

114.    Defendants knew that the bribery, overcapacity, and/or alleged violation of the Standard Building Code and/or the International Fire Code were groundless.

115.    Defendants knew or should have known that said charges, and the charges referenced in this Complaint were groundless, yet sought to use the process of Court for an ulterior purpose, including, but not limited to, the purpose of aiding Defendants' self-admitted crusade to "shut down the Griders."

116.    As a result of said abuse of process, Plaintiffs, Pat Grider, Dan Grider, The Fourth Quarter, Inc. and The Grid, Inc. suffered the following injuries and damages:

        (a)     loss of substantial sums of money;

        (b)     suffered diminished value of business;

        (c)     were wrongfully arrested, jailed and/or prosecuted (Plaintiff Pat Grider);

        (d)     suffered sever mental anguish, embarrassment and suffering, and;

        (e)     were seriously injured and damaged.

117.    Plaintiffs claim punitive damages of the individual Defendants due to their reckless, wanton and/or intentional conduct.

WHEREFORE, Plaintiffs demand judgment against the above named Defendants jointly and severally for actual, special, compensatory and punitive damages (individual Defendants only), in an amount to be determined by a jury, together with interest and the costs of this action.

## COUNT IV:
## FALSE ARREST AND IMPRISONMENT

118.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 117 above as if set forth fully herein.

119.    At material times as set forth herein, Defendants unlawfully detained Plaintiffs, which directly or indirectly resulted in confinement of Plaintiffs.

120.    As a direct and proximate result of the conduct of the Defendants, Plaintiffs suffered harm and damages, including but not limited to the deprivation of Plaintiffs' personal liberties, severe mental anguish and embarrassment.

121.    Plaintiffs claim punitive damages of the individual Defendants due to their reckless and/or wanton conduct.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally for actual, special, compensatory and punitive damages (individual Defendants only), in an amount to be determined by a jury together with interest and the costs of this action.

## COUNT V:
## CONSPIRACY

122.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 121 above as if set forth fully herein.

123.    All the Defendants:

(a)    had an unlawful purpose or purposes to be accomplished, including but not limited to, harming Plaintiffs, putting Plaintiffs out of business and harassing, annoying, bothering, intimidating and otherwise damaging Plaintiffs;

(b)    had an agreement on the purpose(s) or course of action;

(c)    performed one or more unlawful overt acts; and,

(d)    damaged Plaintiffs are a direct result of those acts.

124.    Plaintiffs only recently discovered or should have discovered the existence of the conspiracy.

125.    As a direct result of said conspiracy, Plaintiffs suffered the following injuries and damages:

(a)    loss of substantial sums of money;

(b)    suffered diminished value of business;

(c)     were wrongfully arrested, jailed and/or prosecuted (Plaintiffs Dan

Grider and Pat Grider;

(d)     suffered sever mental anguish, embarrassment, and suffering, and;

(e)     were seriously injured and damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and

severally for actual, general, special, and compensatory damages, and further demand

judgment against each individual Defendant, jointly and severally, for punitive damages

against the individual Defendants, in an amount to be determined by a jury, together with

interest and the costs of this action.

## COUNT VI:
## NEGLIGENCE

126.    Plaintiffs re-allege and incorporate by reference the allegations in

paragraphs 1 through 125 above as if set forth fully herein.

127.     Defendants negligently committed the acts set forth in the Statement of

Facts above, including but not limited to negligently harassed, annoyed, bothered,

conspired to harm, intimidated, interfered with Plaintiffs' lawful activities, injured and

otherwise violated substantial lawful rights of Plaintiffs.

128.    As a direct result of the Defendants' negligence, Plaintiffs were caused to:

(a)     Lose substantial sums of money;

(b)     Suffer diminished use and value of their business;

(c)     Be wrongfully arrested and prosecuted;

(d)     Suffer severe mental anguish and emotional distress;

(e)     Suffer tremendous worry and anxiety, and;

(f)     Suffer serious and permanent injuries and damages.

WHEREFORE, Plaintiffs demands judgment against Defendants, jointly and severally including punitive damages against the individual Defendants, in an amount as determined by a trial jury including interest and the cost of this action.

## COUNT VII:
## WANTONNESS

129.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 128 above as if set forth fully herein.

130.    The Defendants wantonly committed the acts set forth in the Statement of Facts above, including but not limited to, wantonly harassed, annoyed, bothered, conspired to harm, intimidated, interfered with Plaintiffs' lawful activities, injured and otherwise violated substantial lawful rights of Plaintiffs.

131.    As a direct result of the Defendants' wantonness, Plaintiff was caused to:

(a)    Lose substantial sums of money;

(b)    Suffer diminished use and value of their business;

(c)    Be wrongfully arrested and prosecuted;

(d)    Suffer severe mental anguish and emotional distress;

(e)    Suffer tremendous worry and anxiety, and;

(f)    Suffered serious and permanent injuries and damages.

132.    Plaintiffs claim punitive damages of the individual Defendants due to their wanton conduct.

WHEREFORE, Plaintiffs demands judgment against Defendants jointly and severally, including punitive damages against the individual Defendants, in an amount as determined by a trial jury including punitive damages, interest and the cost of this action.

## COUNT VIII:
### <u>DECEIT</u>

133.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 132 above as if set forth fully herein.

134.    This action is brought pursuant to ALA. CODE §§ 6–5–100, 6–5–103 and 6–5–104, (1975), *et seq.*, as amended.

135.    Defendants knew that the Defendants unlawfully, fraudulently, deceitfully and/or improperly:  arrested; cited; prosecuted; assigned occupancy numbers; required substantial and unnecessary improvements to the premises housing Skybar; engaged in selective prosecution of Plaintiffs; engaged in a scheme and/or conspiracy to put Plaintiffs out of business; investigated plaintiffs; proposed and/or adopted unlawful and/or unconstitutional City Ordinances targeting Plaintiffs; interfered with contractual and/or business relationships of Plaintiffs, and violated Plaintiffs' constitutional rights.

136.    Defendants, by failing to inform Plaintiffs of the facts and matters set forth in paragraph 135 above, and/or misrepresenting said facts and matters, did, willfully misrepresent and conceal material facts to/from Plaintiffs in such a manner to discover and mislead Plaintiffs.

137.    Plaintiffs believed and relied on Defendants' misrepresentations and deceitful acts to their substantial detriment.

138.    As a proximate cause of said deceit, Plaintiffs were caused to suffer the following injuries and damages:

(a)    Lose substantial sums of money;

(b)    Suffer diminished use and value of their business;

(c)    Be wrongfully arrested and prosecuted;

(d)    Suffer severe mental anguish and emotional distress;

(e)    Suffer tremendous worry and anxiety, and;

(f)    Suffer serious and permanent injuries and damages.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, including punitive damages against the individual Defendants, in an amount as determined by a trial jury including punitive damages, interest and the cost of this action.

## COUNT IX:
## FRAUDULENT SUPPRESSION

139.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 138 above as if the same were forth fully herein.

140.    This action is brought pursuant to ALA. CODE §§ 6–5–100 and 6–5–102 (1975), *et seq.*, as amended.

141.    Defendants suppressed material facts which they were under an obligation to communicate to Plaintiffs, including but not limited to the facts and matters set forth in paragraph 135 above, and that Plaintiffs were being unlawfully targeted and investigated with the goal being to put Plaintiffs out of business, and that the occupancy numbers referenced herein were incorrect and improperly calculated, and concerning the facts and matters set forth in the statement of facts above.

142.    Plaintiffs believed and relied on Defendants' misrepresentations to their substantial detriment.

143.    As a direct proximate result of Defendants' fraudulent suppression of material facts Plaintiffs were caused to suffer the following injuries and damages:

(a)    Lose substantial sums of money;

(b)    Suffer diminished use and value of their business;

  (c)  Be wrongfully arrested and prosecuted;

  (d)  Suffer severe mental anguish and emotional distress;

  (e)  Suffer tremendous worry and anxiety, and;

  (f)  Suffer serious and permanent injuries and damages.

WHEREFORE, Plaintiffs demands judgment against Defendants, jointly and severally including punitive damages against the individual Defendants, in an amount as determined by a trial jury including punitive damages, interest and the cost of this action.

## COUNT X:
## FRAUDULENT MISREPRESENTATION

144. Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 143 above as if the same were forth fully herein.

145. This action is brought pursuant to §§ 6-5-100 and 6-5-101, ALA. CODE (1975), *et seq.*, as amended.

146. Defendants' representations as set forth in paragraphs 41, 49, 62, 74, 75, 77, 78, 79, 81, 83, 84, 85, 86, 87, 88, and 90 and/or the applicable provisions thereof, and as otherwise set forth herein, were false, and Defendants knew they were false; or without knowledge of the true facts, recklessly misrepresented the facts, or said representations were false and were made by mistake, but with the intention that Plaintiffs should rely on them.

147. Plaintiffs believed said representations and relied on them to their substantial detriment.

148. As a direct proximate cause of the Defendants' fraudulent misrepresentations, Plaintiffs were caused to:

  (a)  Lose substantial sums of money;

(b)    Suffer diminished use and value of their business;

(c)    Be wrongfully arrested and prosecuted;

(d)    Suffer severe mental anguish and emotional distress;

(e)    Suffer tremendous worry and anxiety, and;

(f)    Suffer serious and permanent injuries and damages.

WHEREFORE, Plaintiffs demands judgment against Defendants, jointly and severally including punitive damages against the individual Defendants, in an amount as determined by a trial jury including interest and the cost of this action.

### COUNT XI:
### TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONSHIPS

149.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 148 above as if the same were set forth fully herein.

150.    Defendants tortuously (through negligence and/or with intent) interfered with Plaintiffs valid and enforceable contractual and/or business relationships by and between Plaintiffs and third parties.

151.    Defendants were fully aware of the existence of said business and/or contractual relationships.

152.    The actions of Defendants constitute negligent, malicious, intentional and/or willful interference with valid and/or enforceable contracts and/or business relationships by and between Plaintiffs and third-parties.

153.    Defendants' actions were without right and/or justifiable cause.

154.    As a direct proximate cause of Defendants' conduct, Plaintiffs were caused to suffer the following injuries and damages:

(a) Lose substantial sums of money;

(b) Suffer diminished use and value of their business;

(c) Be wrongfully arrested and prosecuted;

(d) Suffer severe mental anguish and emotional distress;

(e) Suffer tremendous worry and anxiety, and;

(f) Suffer serious and permanent injuries and damages.

155. Due to the willful and/or deliberate nature of Defendant's, Plaintiffs claim punitive damages on individual Defendants.

WHEREFORE, Plaintiffs demands judgment against Defendants, including punitive damages against the individual Defendants, in an amount as determined by a trial jury including interest and the cost of this action.

## COUNT XII:
## NEGLIGENT HIRING, TRAINING AND SUPERVISION

156. Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 155 above as the same were set forth fully herein.

157. Defendants, The City, Ham and Duggan, negligently hired, trained/failed to train, and/or supervised/failed to supervise Defendants Duggan, Massey, Meeks, Watson, James, Neal, Crook, Carver, Maddox and Sparks.

158. As a direct result of said Defendant's negligent hiring, training and supervision, Plaintiffs suffered the following injuries and damages:

(a) loss of substantial sums of money;

(b) suffered diminished value of business;

(c) were wrongfully and/or maliciously detained, arrested, jailed and/or prosecuted

- 35 -

(d)    suffered severe mental anguish, embarrassment, and suffering, and;

(e)    were seriously injured and damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally for actual, general, special, and compensatory damages, and further demand judgment against each individual Defendant, jointly and severally, for punitive damages, in an amount to be determined by a jury, together with interest and the costs of this action.

**COUNT XIII:**
**VIOLATION OF AMENDMENT XIV TO**
**THE UNITED STATES CONSTITUTION;**
**COMPLAINT TO DECLARE MUNICIPAL ORDINANCES**
**UNCONSTITUTIONAL AND FOR DAMAGES**

159.    Plaintiffs repeat, re-allege and incorporate by reference the allegations in paragraphs 1 through 158 above with the same force and effect as the same were set forth fully herein.

160.    This action is brought pursuant to 28 U.S.C.A. § 2201, *et seq.* (the "Federal Declaratory Judgment Act"); ALA. CODE § 6-6-221, *et seq.* (1975) (the "Alabama Declaratory Judgment Act"); the laws of the State of Alabama; and the laws of the United States of America.

161.    Municipal Ordinances passed by Defendant, The City of Auburn, Alabama, as set forth and/or referenced in paragraphs 43, 45, 87, 88, 90, 94–103 are unconstitutional.

162.    Plaintiffs have standing to challenge the constitutionality of the aforementioned municipal ordinances based upon Defendants' violation of Plaintiffs'

Due Process and Equal Protection rights, as guaranteed by the Fourteenth Amendment to the United States Constitution.

163.    The Fourteenth Amendment provides, in part, that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV.

164.    Plaintiffs have standing to challenge the constitutionality of the aforementioned municipal ordinances based upon Defendants' violation of Plaintiffs' due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution.  Plaintiffs were charged with violating the above referenced municipal ordinances and currently have cases pending in the Circuit Court of Lee County, Alabama and/or the Municipal Court of the City of Auburn, Alabama.  The abovementioned Municipal Ordinances violate the Plaintiffs' due process rights by the vagueness of the ordinance(s) and the arbitrary enforcement of the ordinance(s).

165.    The Fourteenth Amendment further provides, in part, that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.

166.    The Plaintiffs have standing to challenge the constitutionality of the aforementioned municipal ordinances based upon Defendants' violation of Plaintiffs' equal protection rights as secured by the Fourteenth Amendment to the United States Constitution.  Plaintiffs were charged with violating the above referenced municipal ordinances and have numerous cases pending in the Circuit Court of Lee County, Alabama.  The abovementioned code sections violate the Plaintiffs equal protection

violations by treating similar situated business owners differently in the application and enforcement of the aforementioned municipal ordinance(s).

167.    A justiciable controversy exists between Plaintiffs and The City of Auburn, Alabama, as to the rights, obligations, status and/or legal relations of Plaintiffs and The City.

168.    As a result of said unconstitutional ordinances, Plaintiffs were caused to suffer the following injuries and damages:

(a)    Loss of substantial sums of money;

(b)    Diminished use and value of their business;

(c)    Serious and permanent injuries and damages;

(d)    And other serious damages to be proven at trial.

WHEREFORE, Plaintiffs prays this Honorable Court will ORDER, ADJUDGE and DECREE:

(a)    That this a bona fide cause for Declaratory Judgment;

(b)    That there is a bona fide controversy between Plaintiffs and The City;

(c)    That the Ordinances referenced above are unconstitutional, and that The City be restrained and enjoined from enforcement thereof;

(d)    That Plaintiffs be compensated, in Plaintiffs' separate complaint for damages, for Defendants' violation of Plaintiffs' Constitutional rights in an amount to be determined by the trial jury for actual, general, special and compensatory damages, together with interest and the costs of this action, including attorney's fees,

(e)      Plaintiffs further pray that this Honorable Court will grant unto

Plaintiffs any such other relief that the Court deems to be just and

appropriate under the circumstances.

Respectfully submitted this the 5th day of February, 2008.

WHITTELSEY, WHITTELSEY & POOLE, P.C.


_____/s/ Davis B Whittelsey _____
BY:    DAVIS B. WHITTELSEY (WHI067)
       W. DAVID  DAWSON(DAW013)
       Attorneys for Defendants
       Post Office Box 106
       Opelika, Alabama 36803-0106
       Tel.:   (334) 745-7766
       Fax:    (334) 745-7666
       E-mail: dwhittelsey@wwp-law.com
       E-mail: ddawson@wwp-law.com


**PLAINTIFFS DEMAND TRIAL BY JURY.**

/s/ Davis B Whittelsey _____
DAVIS B. WHITTELSEY
W. DAVID DAWSON


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this the 5th day of February, 2008, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the following via e-mail:

Randall Morgan
Hill, Hill, Carter, Franco, Cole & Black, P.C.
425 South Perry Street
Post Office Box 116
Montgomery, Alabama 36106-0116
(334) 834-7600

/s/ Davis B Whittelsey _____
DAVIS B. WHITTELSEY